UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | |
| | : | Case No. 1:21-cr-00324 (TNM) |
| v. | : | |
| | : | |
| DANIELLE NICOLE DOYLE, | : | |
| | : | |
| Defendant. | : | |

**GOVERNMENT'S SENTENCING MEMORANDUM**

The United States of America, by and through its attorney, the Acting United States Attorney for the District of Columbia, respectfully submits this sentencing memorandum in connection with the above-captioned matter. For the reasons set forth herein, the government requests that this Court sentence Danielle Doyle to two months of home confinement, a probationary term of three years,[1] 60 hours of community service, and $500 in restitution.

## I. Introduction

The defendant, Danielle Doyle, participated in the January 6, 2021, attack on the United States Capitol—a violent attack that forced an interruption of the certification of the 2020 Electoral College vote count, threatened the peaceful transfer of power after the 2020 Presidential election, injured more than one hundred law enforcement officers, and resulted in more than one million dollars' worth of property damage. The government is requesting a sentence of two months of home confinement and a probationary term of three years in this case.

The government recognizes that Danielle Doyle did not personally engage in or espouse violence or property destruction; however, Doyle entered the Capitol by climbing through a broken

---

[1] The plea agreement states that the offense of conviction in this case carries a term of supervised release. This is inaccurate. As this is a petty offense, the offense of conviction does not carry a term of supervised release. *See* 18 U.S.C. § 3583(b)(3).

1

window and subsequently stayed in the Capitol building for at least 24 minutes. Capitol CCTV footage from inside the building appears to show Doyle chanting near or yelling at a law enforcement officer. Also, Doyle photographed the destruction that occurred on January 6, including individuals climbing the scaffolding on the West Front of the building, individuals entering the Capitol building through a broken window, and individuals in military-style clothing inside the Capitol. Finally, she texted an open-source video from January 6, taken inside the Capitol and in which she appears, to another individual more than a month after the riot.

The defendant stands before this Court to be sentenced on a misdemeanor conviction, but her conduct on January 6, like the conduct of scores of other defendants, took place in the context of a large and violent riot that relied on numbers to overwhelm law enforcement, breach the Capitol, and disrupt the proceedings. But for her actions alongside so many others, the riot likely would have failed.

## II. Factual and Procedural Background

*The January 6, 2021 Attack on the Capitol*

To avoid exposition, the government refers to the general summary of the attack on the U.S. Capitol. *See* ECF 24 ¶¶ 1-7. As this Court knows, a riot cannot occur without rioters, and each rioter's actions – from the most mundane to the most violent – contributed, directly and indirectly, to the violence and destruction of that day. With that backdrop, we turn to the defendant's conduct and behavior on January 6.

*Danielle Doyle's Role in the January 6, 2021, Attack on the Capitol*

On January 6, 2021, Danielle Doyle entered the U.S. Capitol building at approximately 2:23 p.m., by climbing through a broken window located next to the Senate Wing Door. Prior to entering the building, Doyle walked by individuals holding signs with phrases such as "THE

STORM IS HERE." She also witnessed individuals climbing statues and the scaffolding on the west front of the building, and she saw the torn fabric on the exterior of the scaffolding.

After witnessing this destruction, Doyle nevertheless entered the Capitol through the broken window near the Senate Wing Door at about 2:23 p.m. This window had been breached by other rioters about 10 minutes before she entered. Doyle remained in the Capitol building for at least 24 minutes. A still from the CCTV footage is below. Doyle is circled in red.



After entering, Doyle walked upstairs and entered the Rotunda, where she walked around from about 2:25 to 2:26 p.m. At approximately 2:28 p.m., Doyle entered the Statuary Hall Connector, where she and a group of other rioters were stopped by a law enforcement officer. Doyle then appears to chant or yell in the direction of the officer, but she left the area without otherwise engaging with the officer. A screenshot of Doyle chanting or yelling in the direction of the law enforcement officer is below. Doyle is circled in red, and the officer is circled in blue.



After, Doyle walked back through the Rotunda and descended the Supreme Court Chamber stairs at 2:31 p.m. From about 2:32 to 2:33 p.m. Doyle walked through the Capitol Visitor Center and Orientation Lobby. Doyle then walked through the Crypt from 2:47 to 2:48 p.m.

Photographs from Doyle's own phone demonstrate that she was a firsthand witness to the destruction at the U.S. Capitol. For instance, Doyle photographed individuals climbing the scaffolding on the West Front of the building, and she photographed the torn fabric on the exterior of the scaffolding. She also took photographs inside the Capitol building, including of individuals entering the Capitol building through what appears to be the same broken window near the Senate Wing Door that Doyle herself entered. In addition, she photographed individuals dressed in military-style clothing in the Rotunda. Also, on or about January 25, 2021, she texted a third-party individual, "I literally can't do anymore Q shit. Brandon Stracka was arrested today. He didn't

4

even go in the capitol. This is fucking insane."[2] A few weeks later, she texted a 15-second clip from an open-source video of herself from inside the Capitol building to the same individual. These messages do not appear to be public messages.

Finally, Doyle has admitted that she knew she did not have permission to enter the Capitol building and that she acted with the intent to parade, demonstrate, and picket within the building. *See* ECF 24 ¶ 10.

*Danielle Doyle's Allocution Statement*

Prior to the sentencing, defense counsel provided Doyle's allocution statement to the government. In her allocution, Doyle states that January 6 began as an "exciting" day and that she later felt "disconnected." Specifically, Doyle characterizes January 6, 2021, as a day where "[h]undreds of thousands of Americans came together in support of our President and the America that we love. . . . It was exciting and full of energy." But, after, she heard the "sound of violence" and felt a "shifting energy," and she became "disconnected to what was happening." She recalls that she only began to "recognize[e] right from wrong" after "[s]omeone picked up a stanchion to break something" and she reminded that individual "that's not what we're here for."

Doyle also states that she is "truly sorry for the decision [she] made that day and for the fear and sleepless nights that is has caused [her] family [sic]." She further states, "I acknowledge my wrongdoings and take full and absolute responsibility for them." The government has also reviewed Doyle's letters of support, in consideration of a just and necessary sentence.

---

[2] Although the message is not dated, Stracka was arrested on January 25, 2021. *See* 21-mj-134-RMM.

*The Charges and Plea Agreement*

On February 24, 2021, Danielle Doyle was charged by complaint with violating 18 U.S.C. §§ 1752(a)(1) and (2) and 40 U.S.C. §§ 5104(e)(2)(D) and (G).  On February 25, 2021, she was arrested in Oklahoma City, Oklahoma.  On April 28, 2021, Doyle was charged by Information with the same crimes.  On July 14, 2021, she pleaded guilty to Count Four of the Information, which charged a violation of 40 U.S.C. § 5104(e)(2)(G).  In the plea agreement, Doyle agreed to pay $500 in restitution.[3]

### III.   Statutory Penalties

The defendant now faces sentencing on a single count of 40 U.S.C. § 5104(e)(2)(G).  As noted by the plea agreement and the U.S. Probation Office, the defendant faces up to six months of imprisonment and a fine of up to $5,000.  As this offense is a Class B Misdemeanor, the Sentencing Guidelines do not apply.  18 U.S.C. § 3559; U.S.S.G. § 1B1.9.

### IV.   Sentencing Factors Under 18 U.S.C. § 3553(a)

In this case, sentencing is guided by 18 U.S.C. § 3553(a).  Some of the factors this Court must consider include: the nature and circumstances of the offense, § 3553(a)(1); the history and characteristics of the defendant, *id.*; the need for the sentence to reflect the seriousness of the offense and promote respect for the law, § 3553(a)(2)(A); the need for the sentence to afford adequate deterrence, § 3553(a)(2)(B); and the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct. § 3553(a)(6). We therefore turn to these factors.

---

[3] The plea agreement mistakenly states that the defendant will pay restitution to the U.S. Department of the Treasury.  The Architect of the Capitol is the correct payee.

### A. The Nature and Circumstances of the Offense

The attack on the U.S. Capitol on January 6, 2021, is a criminal offense unparalleled in American history. It represented a grave threat to our democratic norms; indeed, it was one of the only times in our history when the building was occupied by hostile participants. By its very nature, the attack defies comparison to other events. So, too, does the conviction this defendant now faces. Picketing, demonstrating, or parading at the Capitol as part of the riot on January 6 is not like picketing at the Capitol on any other day, without other rioters present. To portray this crime as routine unjustly downplays what actually happened.

While each defendant should be sentenced based on their individual conduct, this Court should note that each individual person who entered the Capitol on January 6 did so under the most extreme of circumstances. As a person entered the Capitol, they would—at a minimum—have crossed through numerous barriers and barricades and heard the throes of a mob. Depending on the timing and location of their approach, they also may have observed extensive fighting with law enforcement and likely would have smelled chemical irritants in the air. No rioter was a mere tourist that day.

Additionally, while looking at the defendant's individual conduct, we must assess such conduct on a spectrum. This Court, in determining a fair and just sentence on this spectrum, should look to a number of critical facts, to include: (1) whether, when, and how the defendant entered the Capitol building; (2) whether the defendant engaged in any violence or incited violence; (3) whether the defendant engaged in any acts of destruction; (4) the defendant's reaction to acts of violence or destruction; (5) whether during or after the riot, the defendant destroyed evidence; (6) the length of the defendant's time inside of the building, and exactly where the defendant traveled; (7) the defendant's statements in person or on social media; (8) whether the defendant

cooperated with, or ignored, law enforcement; and (9) whether the defendant otherwise exhibited evidence of remorse or contrition. While these factors are neither exhaustive nor dispositive, they help to place each individual defendant on a spectrum as to their fair and just punishment.

While the above list is not exhaustive, a review of some of the factors is helpful in this context. For example, Danielle Doyle entered the Capitol building at 2:23 p.m. by climbing through a broken window located next to the Senate Wing Door. Doyle entered approximately ten minutes after other rioters first breached the Senate Wing door and the nearby window. When Doyle entered the Capitol through the window, there were clear signs of damage. In fact, the window through which Doyle entered the Capitol was not a normal entry point; the window had been broken by rioters.

In addition, Doyle remained inside the building for at least 24 minutes. After entering, Doyle walked upstairs and entered the Rotunda, where she walked around from about 2:25 to 2:26 p.m. At approximately 2:28 p.m., Doyle proceeded to the Statuary Hall Connector, and she and a group of other rioters were stopped by a law enforcement officer. While in the Statutory Hall Connector, Doyle appears to have been chanting or yelling in the direction of the officer. Doyle then left the area without any further interaction with the law enforcement officer. She walked back through the Rotunda and descended the Supreme Court Chamber stairs at 2:31 p.m. Thereafter, from about 2:32 to 2:33 p.m. Doyle walked through the Capitol Visitor Center and Orientation Lobby. Then, Doyle walked through the Crypt from 2:47 to 2:48 p.m. Ultimately, Doyle walked through three levels of the U.S. Capitol building.

With respect to use of social media, Doyle used Telegram to communicate with another individual about the events on January 6, 2021. Around January 25, 2021, she texted a third-party individual, "I literally can't do anymore Q shit. Brandon Stracka was arrested today. He didn't

even go in the capitol. This is fucking insane." On February 17, 2021, she sent an open-source video in which she appears, taken from inside the Capitol building on January 6, 2021, to the same individual. These messages do not appear to be public messages.

The government has no evidence that Danielle Doyle engaged in any violence or destruction of property, nor that she destroyed evidence after the riot. But Doyle was a firsthand witness to destruction at the Capitol. In fact, Doyle photographed much of the destruction on January 6, including individuals climbing on scaffolding, individuals climbing through windows to enter the building, and individuals dressed in military-style clothing. Rather than allow this conduct to deter the defendant from entering the building, she entered through the same broken window she photographed and then remained in the building for at least 24 minutes. Also, in her allocution statement, Doyle describes the attempted destruction of property that she witnessed. Specifically, she provides, "Someone picked up a stanchion to break something. I gently took their arm, looked into their eyes, and said, 'that's not what we're here for.'" The government has no evidence, however, of this interaction.

Finally, Doyle has shown some remorse for her actions. In a written allocution statement, provided to the government before this sentencing, Doyle stated that she is "truly sorry for the decision [she] made that day" and "acknowledge[s] [her] wrongdoings." On the other hand, in her only interview with law enforcement, which occurred upon her arrest, Doyle ended the interview when law enforcement asked questions about Doyle entering the Capitol building. While the government wants to credit the defendant's remorse in her allocution statement, we also recognize that Doyle has not been fully transparent with law enforcement and that we have no support for Doyle's remorse, other than her representations in her allocution statement. To boot, it is respectfully difficult to rationalize how someone so "disconnected" from the violence, the

destruction, or even the scaffold climbers made the conscious decision to enter the building. Nevertheless, we take into consideration her apology.

Thus, the nature and circumstances of the offense, as well as the aggravating factors described above, suggest that a purely probationary sentence is inappropriate in this case and support a sentence of two months home confinement and a probationary term of three years.

### B. The History and Characteristics of the Defendant

As set forth in the PSR, Danielle Doyle's criminal history is limited to traffic infractions and an arrest for Driving Under the Influence in November 2002, with the disposition unclear. Dkt. 26 ¶¶ 27-28. If the Sentencing Guidelines did apply to her offense of conviction, she would have no criminal history points. USSG § 4A1.2(c)(2). Accordingly, she would be in Criminal History Category I. USSG §§ 4A1.1, 5A. Danielle Doyle holds stable employment and appears to be in compliance with her conditions of release. Dkt. 26. This factor supports a more lenient sentence than would be the case otherwise.

### C. The Need for the Sentence Imposed to Reflect the Seriousness of the Offense and Promote Respect for the Law

The attack on the U.S. Capitol building and grounds, and all that it involved, was an attack on the rule of law. "The violence and destruction of property at the U.S. Capitol on January 6 showed a blatant and appalling disregard for our institutions of government and the orderly administration of the democratic process."[4] As with the nature and circumstances of the offense, this factor supports a sentence of incarceration, as it will in most cases arising out of the riot on January 6, 2021, including in misdemeanor cases. *See United States v. Joshua Bustle and Jessica*

---

[4] Federal Bureau of Investigation Director Christopher Wray, Statement before the House Oversight and Reform Committee (June 15, 2021) (hereinafter "FBI Director Wray's Statement"), available at https://oversight.house.gov/sites/democrats.oversight.house.gov/files/Wray%20 Testimony.pdf

*Bustle*, 21-cr-238-TFH, Sent. Tr. at 3 ("As to probation, I don't think anyone should start off in these cases with any presumption of probation. I think the presumption should be that these offenses were an attack on our democracy and that jail time is usually -- should be expected.").

### D. The Need for the Sentence to Afford Adequate Deterrence

Deterrence encompasses two goals: general deterrence, or the need to deter crime generally, and specific deterrence, or the need to protect the public from further crimes by this defendant. 18 U.S.C. § 3553(a)(2)(B), (C); *United States v. Russell*, 600 F.3d 631, 637 (D.C. Cir. 2010). In terms of specific deterrence, while only time will tell, the defendant has offered her apologies to the government and the Court, and continues to have stable employment. This would lean towards a disposition more favorable to the defendant.

The demands of general deterrence, on the other hand, weigh overwhelmingly in favor of incarceration, as they will for nearly every case arising out of the violent riot at the Capitol. Indeed, general deterrence may be the most compelling reason to impose a sentence of incarceration. For the violence at the Capitol on January 6 was cultivated to interfere, and did interfere, with one of the most important democratic processes we have: the transfer of power. As noted by Judge Moss during sentencing, in *United States v. Paul Hodgkins*, 21-cr-188-RDM:

> [D]emocracy requires the cooperation of the governed. When a mob is prepared to attack the Capitol to prevent our elected officials from both parties from performing their constitutional and statutory duty, democracy is in trouble. The damage that [the defendant] and others caused that day goes way beyond the several-hour delay in the certification. It is a damage that will persist in this country for decades.

Tr. at 69-70. Indeed, the attack on the Capitol means "that it will be harder today than it was seven months ago for the United States and our diplomats to convince other nations to pursue democracy. It means that it will be harder for all of us to convince our children and our grandchildren that democracy stands as the immutable foundation of this nation." *Id.* at 70.

11

The gravity of these offenses demand deterrence.  This was not a protest.  *See id.* at 46 ("I don't think that any plausible argument can be made defending what happened in the Capitol on January 6th as the exercise of First Amendment rights.").  And it is important to convey to future rioters and would-be mob participants—especially those who intend to improperly influence the democratic process—that their actions will have consequences.  There is possibly no greater factor that this Court must consider.

In short, the question of deterrence, here, is multi-faceted. The demands of general deterrence favor incarceration, but the need for specific deterrence may be met in this case with a sentence of home confinement. The conduct of certain defendants – although not this defendant – may also warrant actual incarceration to serve as an appropriate deterrent.

### E.  The Need to Avoid Unwarranted Sentencing Disparities

As the Court is aware, the government has charged hundreds of individuals for their roles in this one-of-a-kind assault on the Capitol, ranging from unlawful entry misdemeanors, to assault on law enforcement officers, to conspiracy to corruptly interfere with Congress.  Each offender must be sentenced based on their individual circumstances, but with the backdrop of January 6 in mind.  Moreover, each offender's case will exist on a spectrum that ranges from conduct meriting a probationary sentence to crimes necessitating years of imprisonment. The misdemeanor defendants will generally fall on the lesser end of that spectrum, but misdemeanor breaches of the Capitol on January 6, 2021 were not minor crimes.  A probationary sentence should not necessarily become the default.  Indeed, the government invites the Court to join Judge Lamberth's admonition that "I don't want to create the impression that probation is the automatic outcome here because it's not going to be." *United States v. Anna Morgan-Lloyd*, 1:21-cr-00164 (RCL), Tr. 6/23/2021 at 19.

While the number of sentenced defendants is low, we have already begun to see meaningful distinctions between offenders. Those who engaged in felonious conduct are generally more dangerous and, thus, treated more severely in terms of their conduct and subsequent punishment. Those who trespassed, but whose conduct involved aggravating factors, merit serious consideration of active incarceration, while those who trespassed, but engaged in less aggravating factors, deserve a sentence more in line with minor incarceration or home confinement. After a review of the applicable § 3553 factors, the government believes that the defendant's conduct falls in the latter category. Regardless, Doyle entered the Capitol building through a broken window, remained in the building for at least 24 minutes, appears to have chanted at or yelled at or near a law enforcement officer, was a firsthand witness to some of the destruction at the Capitol and photographed it, and texted a video clip from inside the Capitol on January 6 to another individual more than a month after the riot. Thus, Doyle's case is not comparable to those who obtained a purely probationary sentence and a sentence of home confinement is appropriate.

## V.     Conclusion

Sentencing here requires that the Court carefully balance the various factors set forth in 18 U.S.C. § 3553(a). As detailed above, some of those factors support a sentence of incarceration and some support a more lenient sentence. Balancing these factors above, the government recommends that this Court sentence Danielle Doyle to two months of home confinement, three years of probation, 60 hours of community service, and $500 in restitution. Such a sentence protects the community, promotes respect for the law, and deters future crime by imposing restrictions on Doyle's liberty because of her behavior, while still recognizing her early acceptance of responsibility. Additionally, such a sentence recognizes that some but not all the factors

enumerated in Section IV.A., above, apply to this case. It also allows continued monitoring of Danielle Doyle in the event of future participation in similar conduct.

        Respectfully submitted,

        CHANNING D. PHILLIPS
        ACTING UNITED STATES ATTORNEY

By:   */s/ Laura E. Hill*
      LAURA E. HILL
      Trial Attorney, Detailee
      NV Bar No. 13894
      175 N Street, NE
      9th Floor
      Washington, D.C. 20002
      202-598-3962
      laura.e.hill@usdoj.gov