```
 1                    BEFORE THE UNITED STATES DISTRICT COURT
                          FOR THE DISTRICT OF COLUMBIA
 2

 3     UNITED STATES OF AMERICA,         .
                                         .  Case Number 21-cr-324
 4                Plaintiff,             .
                                         .
 5          vs.                          .
                                         .  Washington, D.C.
 6     DANIELLE NICOLE DOYLE,            .  October 1, 2021
                                         .  2:05 p.m.
 7                Defendant.             .
       - - - - - - - - - - - - - - - - -
 8

 9                       TRANSCRIPT OF SENTENCING HEARING
                       BEFORE THE HONORABLE TREVOR N. MCFADDEN
10                        UNITED STATES DISTRICT JUDGE

11     APPEARANCES:

12     For the United States:       LAURA HILL, ESQ.
                                    U.S. Department of Justice
13                                  175 N Street Northeast
                                    Room 9.1811
14                                  Washington, D.C. 20002

15     For the Defendant:          IRVEN BOX, ESQ.
                                    Box and Box Attorneys
16                                  2621 South Western Avenue
                                    Oklahoma City, Oklahoma 73109
17
                                    RAMMY BARBARI, ESQ.
18                                  Price Benowitz LLP
                                    409 Seventh Street Northwest
19                                  Suite 100
                                    Washington D.C. 20004
20

21     Official Court Reporter:    SARA A. WICK, RPR, CRR
                                    333 Constitution Avenue Northwest
22                                  U.S. Courthouse, Room 4704-B
                                    Washington, D.C. 20001
23                                  202-354-3284

24
       Proceedings recorded by stenotype shorthand.
25     Transcript produced by computer-aided transcription.
```

```
 1                    P R O C E E D I N G S

 2          (Call to order of the court.)

 3               COURTROOM DEPUTY:  Your Honor, this is Criminal Case

 4     21-324, United States of America versus Danielle Nicole Doyle.

 5          Counsel, please come forward to identify yourself for the

 6     record, starting with the government.

 7               MS. HILL:  Good afternoon, Your Honor.  Laura Hill for

 8     the United States.

 9               THE COURT:  Good afternoon, Ms. Hill.

10               MR. BOX:  Good afternoon, Your Honor.  Irven Box

11     representing the defendant, Nicole Doyle.

12               THE COURT:  Good afternoon, Mr. Box, and good

13     afternoon, Ms. Doyle.

14               THE DEFENDANT:  Good afternoon.

15               MR. BARBARI:  Good afternoon, Your Honor.  Rammy

16     Barbari from Price Benowitz on behalf of David Benowitz.

17               THE COURT:  Good afternoon, sir.

18          We are here for the sentencing of the defendant, Danielle

19     Doyle, who has pled guilty to one count of parading,

20     demonstrating, or picketing in a Capitol building in violation

21     of 40 U.S.C. 5104.

22          I've received and reviewed the presentence investigation

23     report and sentencing recommendation from the Probation Office,

24     as well as sentencing memoranda from the government and

25     Ms. Doyle, including numerous attached letters from others in
```

1    Ms. Doyle's community.

2         Are there any other documents or materials that I should

3    have reviewed?  Ms. Hill?

4              MS. HILL:  No, Your Honor.

5              THE COURT:  And Mr. Box?

6              MR. BOX:  No, Your Honor.

7              THE COURT:  Ms. Doyle, this sentencing hearing will

8    proceed in four steps, many of which may seem a bit mechanical

9    to you.  But I want you to keep in mind why we are here today

10   and the gravity of the situation.  You've committed a federal

11   crime.  Today's proceeding is a serious matter, as it is about

12   the consequences that you will face because of your decision to

13   engage in criminal behavior in violation of federal law.

14        The first step, ma'am, is for me to determine whether

15   you've reviewed the presentence report and whether there are any

16   outstanding objections to it and, if so, to resolve those

17   objections.

18        The next step is for me to hear from the government, from

19   your counsel, and from you, ma'am, if you wish to be heard about

20   sentencing in this case.

21        And the final step requires me to fashion a just and fair

22   sentence in light of the factors Congress set out in 18 U.S.C.

23   3553(a).  As a part of this last step, the Court will actually

24   impose the sentence, along with the other required consequences

25   of the offense.

1     All right.  So turning to that first step, the final

2 presence investigation was filed on December 23rd of this

3 year.  The Probation Office filed its final sentencing

4 recommendation on the same day.  The defense filed its memoranda

5 in aid of sentencing on January -- or September 7th, and the

6 government filed its memorandum in aid of sentencing on

7 September 21st.  I'm sorry.  I think the -- yeah, that's

8 correct.

9     Does the government have any objection to any of the

10 factual determinations set forth in the presentence report,

11 Ms. Hill?

12          MS. HILL:  No, Your Honor.

13          THE COURT:  Mr. Box, have you and Ms. Doyle read and

14 discussed the presentence report?

15          MR. BOX:  We have, Your Honor.

16          THE COURT:  Does the defendant have any objection to

17 any of the factual statements set forth in it?

18          MR. BOX:  She does not, Your Honor.

19          THE COURT:  Thank you, sir.

20     Ms. Doyle, if you could come forward, ma'am.  Ma'am, are

21 you fully satisfied with your attorney in this case?

22          THE DEFENDANT:  Yes, sir, Your Honor.

23          THE COURT:  Do you feel that you've had enough time to

24 talk to him about the Probation Office's presentence report and

25 the papers the government filed in connection with sentencing?

1          THE DEFENDANT:  Yes, sir, Your Honor.

2          THE COURT:  All right.  Thank you.  You may have a

3     seat, ma'am.

4        The Court will accept the facts as stated in the

5     presentence report.  The presentence report will serve as my

6     findings of fact for purposes of this sentencing.

7        All right.  The sentencing guidelines do not apply because

8     this crime is a Class B misdemeanor.

9        Turning now to the applicable penalties, the maximum jail

10    term the Court may impose for Ms. Doyle's offense is six months.

11    The maximum fine the Court may impose for the offense is $5,000.

12    There is also a mandatory special assessment of $10.  And

13    according to 18 U.S.C. 3561, Ms. Doyle is eligible for up to

14    five years of probation because the offense is a misdemeanor.

15    And according to 18 U.S.C. 3663(a), the Court shall order

16    restitution in the amount of $500.

17        And I believe the government is not seeking forfeiture.  Is

18    that correct, Ms. Hill?

19          MS. HILL:  That is correct, Your Honor.

20          THE COURT:  All right.  Have I accurately stated the

21    statutory framework under which we are operating in regard to

22    this case?

23          MS. HILL:  You have, Your Honor.

24          THE COURT:  All right.  Mr. Box?

25          MR. BOX:  Yes, Your Honor, you have.

1        THE COURT:  Okay.  Before I discuss the other

2   sentencing factors that will bear on the Court's final decision,

3   I will share with the parties the particular sentence the

4   Probation Office has recommended, taking into account the

5   advisory guideline sentence, the available sentences, and all of

6   the factors listed in Section 3553(a).

7        The Probation Office has recommended a sentence of no jail

8   time, a three-year term of probation, a fine of $1,800,

9   restitution in the amount of $500, and a special assessment of

10   $10.  The recommendation of the Probation Office is based solely

11   on the facts and circumstances contained in the presentence

12   report.

13        I must now consider the relevant factors that Congress set

14   out in 18 U.S.C. 3553(a) to ensure that the Court imposes a

15   sentence that is sufficient but not greater than necessary to

16   comply with the purposes of sentencing.  These purposes include

17   the need for the sentence imposed to reflect the seriousness of

18   the offense, to promote respect for the law, and to provide just

19   punishment for the offense.  The sentence should also afford

20   adequate deterrence to criminal conduct, protect the public from

21   future crimes of the defendant, and promote rehabilitation.

22        In addition to the guidelines and policy statements, I must

23   consider the nature and circumstance of the offense, the history

24   and characteristics of the defendant, the need for the sentence

25   imposed, the need to avoid unwarranted sentence disparities

among defendants with similar records who have been found guilty
of similar conduct, and the types of sentences available.

Does the government wish to be heard on the application of
factors set forth in 3553(a), request a variance, or otherwise
make a sentencing recommendation?

MS. HILL:  Yes, Your Honor, we do.

THE COURT:  Thank you, ma'am.

MS. HILL:  Your Honor, the government's position is
laid out in our sentencing memorandum.  So I won't belabor
what's in the sentencing memorandum, but I would like to make a
few points in summary.

The riot was a violent attack, and it threatened the
peaceful transfer of power after the 2020 presidential election.
Hundreds have now been charged with crimes related to their
actions on that date, including with crimes such as assault on
federal officer and obstruction of an official proceeding.  In
addition, the rioters on that date caused more than $1 million
worth of property damage.

That said, we do base our sentencing recommendation on the
specific conduct of the individual, and we have put significant
resources into making sure that our sentencing recommendations
avoid unwarranted sentencing disparities.  In fact, we've put
together a list of factors that we are now considering in all
Capitol riot cases, and several of those factors apply here.

First, Ms. Doyle, before even entering the building,

1   witnessed a lot of the destruction that was occurring on that
2   date.  She saw rioters on scaffolding; she saw torn fabric on
3   the scaffolding.  She witnessed individuals holding signs that
4   said things like, quote, the storm is here.  She also witnessed
5   individuals climbing through a broken window in order to get
6   into the Capitol building that day.
7       And we know all of these things because Ms. Doyle
8   photographed all of these things on her own phone.  She
9   documented all of these events.
10      And after witnessing and documenting these events,
11  Ms. Doyle decided to enter the building through that same broken
12  window that she had photographed previously.  She climbed
13  through the broken window and then stayed in the building for 24
14  minutes.  She eventually went through three levels of the
15  Capitol building.  Starting with the entering into the building,
16  she went in the basement for the Capitol Visitor Center up to
17  the second floor to the rotunda.
18      And while in the building, she had one -- at least one
19  interaction with law enforcement where she was chanting in or
20  yelling in the direction of the law enforcement officer.
21      After the event that day, she texted a third party, quote,
22  I literally can't do any more Q shit.  Brandon Straka was
23  arrested today.  He didn't even go in the Capitol.  This is
24  fucking insane, end quote.  A few weeks later, she texted the
25  same individual a 15-second clip from an open-source video of

1   herself in the rotunda.

2       At the same time, Ms. Doyle has apologized in her

3   allocution statement for her actions.  She has very limited

4   criminal history.  And as far as we know, she did not post about

5   these events on social media.

6       And so for these reasons, the government does not believe

7   that a probation-only sentence is appropriate.  Instead, the

8   government is recommending that Ms. Doyle serve two months of

9   home confinement, a probationary term of three years, 60 hours

10  of community service, and $500 in restitution.

11      I would also like to note, Your Honor, that prior to this

12  hearing I was notified that Ms. Doyle actually did sit with the

13  FBI for about an hour and a half for an interview.  So I would

14  just like to correct that point from our sentencing memorandum.

15      And I would be happy to answer any questions from the

16  Court.

17          THE COURT:  All right.  Thanks, Ms. Hill.

18      You know, I will tell you, there was a line that kind of

19  jumped out at me in your sentencing recommendation.  It

20  said, "It is important to convey to future rioters and would-be

21  mob participants, especially those who intend to improperly

22  influence the democratic process, that their actions will have

23  consequences.  There's possibly no greater factor that this

24  Court must consider."

25      It occurs to me -- and I know you are a detailee, but that

the U.S. Attorney's Office has, frankly, not prosecuted many people for rioting and mobs over the last year until January 6th.  Mayor Bowser said in a letter of August 31st of last year that the U.S. Attorney's Office declined to prosecute 41 of the 42 rioting arrests made on August 13 and 14.  Indeed, since May 30th, the Metropolitan Police Department has submitted 63 affidavits in support of arrests and search warrants directly related to criminal activities conducted under the guise of First Amendment assemblies.  28 of these arrests have been declined, while another 24 are still pending review by your office.

So I appreciate your perspective, but I think the U.S. Attorney's Office would have more credibility if it was evenhanded in its concern about riots and mobs in this city.

MS. HILL:  I can't speak to the other cases.  I've only been involved in the Capitol riot cases and only a subset of those cases.  But I can tell you that for the Capitol riot cases we are taking them, obviously, very seriously.

THE COURT:  Oh, that's very clear.

MS. HILL:  Over 600 people have been charged thus far is my understanding, and obviously, there is a case-by-case assessment of when prosecution is appropriate.  But unfortunately, I can't speak to the specifics of cases I was not involved in.

THE COURT:  I understand.  Thank you, Ms. Hill.

1        Mr. Box?

2              MR. BOX:  Thank you, Your Honor.

3              THE COURT:  Does the defense wish to be heard on

4     application of factors set forth in 3553(a) and make a

5     sentencing recommendation?

6              MR. BOX:  We do, Your Honor.

7        I would like to bring up one thing.  I know Ms. Hill

8     pointed out that I didn't want to blind-side her and tell her

9     something that was contrary to her sentencing memorandum without

10    her knowing that I was going to speak to it.  But in her

11    memorandum, she said that she had only limited cooperation.  I

12    know she's late getting in the case.  Ms. Cockburn was the

13    attorney, Vivien Cockburn, who we dealt with for months on end,

14    and I would tell the Court that we did do an interview with the

15    FBI and Ms. Cockburn, about an hour and a half Zoom at our

16    office some many months ago.

17       As recent as last week, we got a call from the House

18    subcommittee investigating the intrusion on January 6th and

19    asked if we would volunteer -- Ms. Doyle would volunteer to

20    speak to them in regards to it.  We volunteered, and Wednesday,

21    Ms. Doyle sat down with my son and three FBI agents -- or agents

22    from the congressional subcommittee and interviewed for an hour

23    and a half.

24       So I wanted to let you know that she did -- has been

25    cooperating.

To the extent of this, Your Honor, you've got our
sentencing memorandum.  She is a 37-year-old lady that's a
college graduate, works full-time, employed all her life, has no
criminal behavior.  The incidents in this case are something --
is it an anomaly to her, maybe, maybe not, but I will tell the
Court that she is a very passionate person about her country,
about things that are going on.  And she, in her allocution in
this case, said that she is sorry.

One of the things she pointed out to me that just struck
her after she walked out of there, I may not be able to vote
again.  She's a person that's passionate about her country, what
she does, her rights, and as I said, she made a mistake.  She's
told you in her allocution, I was wrong, I did wrong, I accept
responsibility, I will take whatever punishment.

Judge, in my 50 years plus of being at or doing this, as a
police officer, I arrested people who acknowledged that they had
done wrong.  I've prosecuted people that did that.  I've
defended people.  Most of the time, the acknowledgment was to
save them from being punished with a more harsh punishment.

I think hers is genuine, from the heart.  With the same
passion that she had on that day, she believes now that she was
wrong, and she will accept whatever this Court gives her.  She
came in here today, we talked in the hall, I said I have no idea
what this Court will do, but she said whatever it is, she will
accept.  Of course, she has to.

1    But I will say to the Court that she has been throughout

2    her life a fine young lady.  One of the things that I'm most

3    impressed as a Marine is that she is a person who has been doing

4    the honor flights for all the veterans of World War II and

5    Vietnam.  She is right now working on raising funds to bring

6    them back to Washington that they do once a year, and she's the

7    point person that does that.

8    That's some of her passion that she directs toward that.

9    And she directed passion in this case towards what she did on

10   January 6th, which was wrong, and as I said, she accepts that.

11   I ask you to give her -- I ask the Court to give her

12   probation.  She's full-time employed, working.  She's active in

13   her church.  She belongs to a minority church that she does

14   active work in.  She's active in her volunteering for the

15   veterans.  And she's a good citizen other than this particular

16   criminal law that she violated, which she has expressed and

17   acknowledged that she is ashamed of what she did and apologized

18   for what she did.

19   I just ask the Court to take all the things into

20   consideration of who she is, what she's been, and what she will

21   be in considering what you impose as a sentence here today to

22   her.  And I thank you for your time.

23           THE COURT:  Thank you, Mr. Box.

24   Ms. Doyle, you have the right to make a statement or

25   present any information to mitigate the sentence.  Would you

like to say anything that you would like me to consider before
imposing sentence?

        THE DEFENDANT:  Yes, Your Honor.

    Are you comfortable with me removing my mask while I speak?

        THE COURT:  Yes.

        THE DEFENDANT:  Okay.  I wish that I had some profound
thing to tell you about that day and about why those things
happened and about why I made the decision that I did.  But I
can't.  That moment went from joy and happiness and hope to
something entirely different in the blink of an eye.

    Why I went into that building, I can't tell you.  I don't
know why I made that decision.  But I can tell you that there
was no intention, there was no plan to harm anyone.  I would
never even speak disrespectfully to a police officer, much less
harm one or harm that building.  It means more to me than I
could ever convey, as does this country.

    And I think the thing that I'm most disappointed in is that
so many people came here that day in hopes of representing the
things that we believe in, the things that are important to us,
and again, in a blink of an eye, all of that was overshadowed by
those decisions, by the violence, by the fact that some of us
took things into our own hands.  And for that, I am sorry more
than anything, because it overshadowed the things that were
good.

    And no matter what my punishment is, I am ready to accept

it and take responsibility for the decision I made in that
moment.

THE COURT:  Thank you, ma'am.

THE DEFENDANT:  Thank you.

THE COURT:  You can remain at the podium, ma'am.

I have assessed the particular factors of this case in
light of the relevant 3553(a) factors, and I now want to provide
the remarks for the record and for you, ma'am, about my
considerations in regard to the nature of the offense and your
history and characteristics.

Ms. Doyle, when I looked at those photos of you entering
the Capitol building through a broken window, I just kept
thinking of how you were acting like all those looters and
rioters who plagued our cities last year.  For weeks last year,
windows were boarded up around here.  Humvees with National
Guardsmen patrolled our streets.  That was because looters and
rioters decided that the law did not apply to them.  And that's
what you did on January 6.

Now, it's true that prosecutors have charged very few
people for last year's riots while they are aggressively
prosecuting anyone who entered the Capitol building on
January 6th, but that does not excuse what you did.  You
participated in a shameful event, a national embarrassment that,
like last year's riots, made us all feel less safe, less
confident that our country can be governed democratically rather

1   than by mob rule.

2        I know that you didn't assault anyone, that you didn't

3   damage any property, and I'm sure you had no intent of breaking

4   into the Capitol building when you woke up on January 6th.  I

5   think those are important mitigating factors in your favor, but

6   I hope you also see that when people allow themselves to get

7   swept up into a mob, they end up creating chaos and lawlessness

8   that the vast majority of those people individually never would

9   have caused or chosen to do.  That's the danger of mobs.

10       But none of us should be judged just by our worst day

11  alone, and it's clear to me that your conduct on January 6th was

12  a strange aberration for you.  You have no criminal convictions.

13  You're gainfully employed.  And you also have expressed real

14  remorse here for your conduct, and I credit and appreciate what

15  you said just now.

16       I've also considered the numerous letters submitted on your

17  behalf that testify to your kindness and human decency.  I'm not

18  concerned that you're going to re-offend, and I think the most

19  important thing you can do now is to start repaying the country

20  for the damage that you in a small but significant way helped

21  cause.

22       For all those reasons and in light of the 3553(a) factors,

23  I don't think the government's recommendation is appropriate

24  here.  I'm going to order you to pay a $3,000 fine.

25       Mr. Box, how long does your client need to pay her

1  financial obligations?

2       MR. BOX:  We will have it within 30 days, if it please

3  the Court.

4       THE COURT:  Okay.

5    Ma'am, there's nothing wrong with expressing your political

6  views, attending political rallies, and even protests are

7  welcome in this country and in this city, but the first and most

8  important step in being a contributing citizen of your society

9  is upholding the laws of that society.  You failed to do that on

10  January 6th.  I hope you learn from that experience and use your

11  political passion and love for our country to protect and

12  promote our country in the future.

13    I will now impose the sentence.  It is the judgment of the

14  court that you, Danielle Nicole Doyle, are hereby sentenced to

15  serve a two-month term of probation, as well as payment of $500

16  in restitution, a $3,000 fine, and a $10 special assessment.

17  The special assessment is immediately payable to the Clerk of

18  the Court for the U.S. District Court for the District of

19  Columbia.

20    While on probation, you shall abide by the mandatory

21  conditions, as well as the standard conditions of probation,

22  which are imposed to establish the basic expectations of your

23  conduct while on probation.

24    You shall also abide by the following special conditions:

25  You are ordered to make restitution to the Architect of the

1   Capitol in the amount of $500.  Restitution payment shall be
2   made to the Clerk of the Court for the U.S. District Court for
3   the District of Columbia for disbursement to the Architect of
4   the Capitol.
5       Payment of all financial obligations described herein are
6   specific requirements of your probation.  You must pay the
7   balance of any financial obligation owed at a rate of no less
8   than $2,000 each month.
9       You must provide the probation officer access to any
10  requested financial information and authorize the release of any
11  financial information.  The Probation Office may share financial
12  information with the United States Attorney's Office.  During
13  your term of probation, you must not incur any new credit
14  charges or open additional lines of credit without the approval
15  of the Probation Office.
16      The financial obligations are payable to the Clerk of the
17  Court, U.S. District Court, at 333 Constitution Avenue
18  Northwest, Washington, D.C. 20001.
19      Within 30 days of any change of address, you shall notify
20  the Clerk of the Court of the change until such time as the
21  financial obligation is paid in full.
22      The Probation Office shall release the presentence
23  investigation report to all appropriate agencies, which includes
24  the United States Probation Office in the approved district of
25  residence, in order to execute the sentence of the Court.

1    Pursuant to U.S.C. 3742 from Chapter 18, you have the right

2  to appeal the sentence imposed by this Court if the period of

3  imprisonment is longer than the statutory maximum.  If you

4  choose to appeal, you may file any appeal within 14 days after

5  the Court enters judgment.

6    As defined in 28 U.S.C. 2255, you also have the right to

7  challenge the conviction entered or sentence imposed if new and

8  currently unavailable information becomes available to you or on

9  a claim that you received ineffective assistance of counsel in

10  entering a plea of guilty to the offense of conviction or in

11  connection with sentencing.  If you are unable to afford the

12  cost of an appeal, you may request permission from the Court to

13  file an appeal without cost to you.

14    Pursuant to *United States v. Hunter*, 809 F.3d 677 from the

15  D.C. Circuit in 2016, are there any objections to the sentence

16  imposed that are not already noted on the record?  Ms. Hill?

17        MS. HILL:  No, Your Honor.

18        THE COURT:  Mr. Box?

19        MR. BOX:  No, Your Honor.

20        THE COURT:  Ms. Hill, do you have a motion?

21        MS. HILL:  We move to dismiss Counts 1 through 3 of

22  the information, Your Honor.

23        MR. BOX:  I'm sorry.  I didn't hear, Your Honor.

24        THE COURT:  The government wishes to dismiss the

25  remaining counts.

1          MR. BOX:  Yes, sir.  Thank you, Your Honor.  We agree

2    with that, of course.

3          THE COURT:  All right.  Without objection, that motion

4    will be granted.

5       All right.  Ms. Doyle, good luck to you.  I hope not to see

6    you again.

7       Yes, sir?

8          PROBATION OFFICER:  Is interest and fees waived on

9    both financial obligations?

10          THE COURT:  No.  Do you need -- I know you proposed

11    transferring this to her district.

12          PROBATION OFFICER:  Do you choose to retain for the

13    two months?

14          THE COURT:  I think it makes sense for us to keep it.

15    So we will retain jurisdiction over this matter.

16       MR. BOX:  I think that will make it easier for paying the

17    fines and things, Your Honor.  Thank you very much.

18          THE COURT:  Thanks, folks.

19          MS. HILL:  Thank you, Your Honor.

20       (Proceedings adjourned at 2:30 p.m.)

21

22

23

24

25

CERTIFICATE OF OFFICIAL COURT REPORTER


        I, Sara A. Wick, certify that the foregoing is a

correct transcript from the record of proceedings in the

above-entitled matter.




/s/ Sara A. Wick                    October 7, 2021

SIGNATURE OF COURT REPORTER         DATE